| Fill in this information to identify your case: | | | |
|---|---|---|---|
| Debtor 1 | Chris | Young Dong | Yoo |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the | Western District of Washington | | |
| Case number (if known) | 16-10191-CMA | | |

Official Form 427

## Cover Sheet for Reaffirmation Agreement

12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

### Part 1: Explain the Repayment Terms of the Reaffirmation Agreement

1. **Who is the creditor?**
   Boeing Employees' Credit Union ("BECU")
   Name of the creditor

2. **How much is the debt?**
   On the date that the bankruptcy case is filed   $ 45,529.52
   To be paid under the reaffirmation agreement  $ 45,529.52
   ✓ $ 746.00 per month for 66 months (if fixed interest rate)

3. **What is the Annual Percentage Rate (APR) of interest?** (See Bankruptcy Code § 524(k)(3)(E).)
   Before the bankruptcy case was filed   ✓   2.84 %
   Under the reaffirmation agreement      2.84 %  ☑ Fixed rate
                                                    ☐ Adjustable rate

4. **Does collateral secure the debt?**
   ☐ No
   ☑ Yes   Describe the collateral   2012 Mercedes-Benz GL450 4WD
   Current market value   $ 40,950.00

5. **Does the creditor assert that the debt is nondischargeable?**
   ☐ No
   ☐ Yes   Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable

6. **Using information from Schedule I: Your Income (Official Form 106I) and Schedule J: Your Expenses (Official Form 106J), fill in the amounts.**

   Income and expenses reported on Schedules I and J | Income and expenses stated on the reaffirmation agreement
   
   6a. Combined monthly income from line 12 of Schedule I   $ 2730.00
   6e. Monthly income from all sources after payroll deductions   $ 5500.00
   
   6b. Monthly expenses from line 22c of Schedule J   $ 7780.00
   6f. Monthly expenses   – $ 3980.00
   
   6c. Monthly payments on all reaffirmed debts not listed on Schedule J   – $ _____
   6g. Monthly payments on all reaffirmed debts not included in monthly expenses   – $ _____
   
   6d. Scheduled net monthly income   $ [5050.00]
   Subtract lines 6b and 6c from 6a
   If the total is less than 0, put the number in brackets
   6h. Present net monthly income   $ 1520.00
   Subtract lines 6f and 6g from 6e
   If the total is less than 0, put the number in brackets

Official Form 427   Cover Sheet for Reaffirmation Agreement   page 1

Debtor 1  Chris  Young Dong  Yoo  Case number 16-10191-CMA

| | | |
|---|---|---|
| 7 | Are the income amounts on lines 6a and 6e different? | ☐ No  ☒ Yes Explain why they are different and complete line 10 __With new job with increased income, total income for the household increased.__ |
| 8 | Are the expense amounts on lines 6b and 6f different? | ☐ No  ☒ Yes Explain why they are different and complete line 10 __living with parents now and we do not anticipate rent payment indefinately__ |
| 9 | Is the net monthly income in line 6h less than 0? | ☒ No  ☐ Yes A presumption of hardship arises (unless the creditor is a credit union) Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses Complete line 10 |
| 10 | Debtor's certification about lines 7-9 | I certify that each explanation on lines 7-9 is true and correct  x /s/ signature  Signature of Debtor 1   x  Signature of Debtor 2 (Spouse Only in a Joint Case) |
| | If any answer on lines 7-9 is Yes, the debtor must sign here | |
| | If all the answers on lines 7-9 are No, go to line 11 | |
| 11 | Did an attorney represent the debtor in negotiating the reaffirmation agreement? | ☐ No  ☒ Yes Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?  ☒ No  ☐ Yes |

**Part 2: Sign Here**

Whoever fills out this form must sign here. I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this Cover Sheet for Reaffirmation Agreement.

x /s/ signature    Date 03/03/2016

Chris Young Dong Yoo
Printed Name

Check one
☒ Debtor or Debtor's Attorney
☐ Creditor or Creditor's Attorney

Official Form 427    Cover Sheet for Reaffirmation Agreement    page 2

Form 2400A (12/15)

Check one:
☐ Presumption of Undue Hardship
☑ No Presumption of Undue Hardship
*See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check*

# UNITED STATES BANKRUPTCY COURT
Western District of Washington

In re **Chris Young Dong Yoo**,
    *Debtor*

Case No. **16-10191-CMA**

Chapter **7**

## REAFFIRMATION DOCUMENTS

Name of Creditor: **Boeing Employees' Credit Union ("BECU")**

☑ Check this box if Creditor is a Credit Union

### PART I. REAFFIRMATION AGREEMENT

Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.

A. Brief description of the original agreement being reaffirmed: **2012 Mercedes-Benz GL450 4WD**

*For example, auto loan*

B. *AMOUNT REAFFIRMED*:   $ **45,529.52**

The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before **01/18/2016**, which is the date of the Disclosure Statement portion of this form (Part V).

*See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The *ANNUAL PERCENTAGE RATE* applicable to the Amount Reaffirmed is **2.8400** %.

*See definition of "Annual Percentage Rate" in Part V, Section C below.*

This is a *(check one)* ☑ Fixed rate    ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

☐ $ 746.00 per month for 66 months starting on 02/05/2016.

☑ Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

***Upon expiration of rescission period, BECU will adjust its system to reflect the new terms and payment amount in this agreement. Term increased 12 months. Payments decreased from $894.58 to $746.00, starting with 02/05/2016 payment. 01/05/2016 payment will be placed on back end of contract.***

E. Describe the collateral, if any, securing the debt:

   Description:          2012 Mercedes-Benz GL450 4WD
   Current Market Value  $              40,950.00

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

☐ Yes. What was the purchase price for the collateral?    $ _____

☑ No. What was the amount of the original loan?           $    59,046.09

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|                                         | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $ 45,529.52 | $ 45,529.52 |
| Annual Percentage Rate                   | 2.8400 %    | 2.8400 %    |
| Monthly Payment                          | $ 894.58    | $ 746.00    |

H. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

## PART II.   DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

   Check one. ☑ Yes    ☐ No

B. Is the creditor a credit union?

   Check one. ☑ Yes    ☐ No

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

1. Your present monthly income and expenses are:

    a. Monthly income from all sources after payroll deductions
    (take-home pay plus any other income)     $ _____

    b. Monthly expenses (including all reaffirmed debts except
    this one)     $ _____

    c. Amount available to pay this reaffirmed debt (subtract b. from a.)     $ _____

    d. Amount of monthly payment required for this reaffirmed debt     $ _____

    *If the monthly payment on this reaffirmed debt (line d.) is greater than the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

    Check one of the two statements below, if applicable:

    ☐ You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

    ☑ You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because: _I expect to receive higher income in next 30-45 days due to change in employment and we are now not paying rental expense for house because we are living with parents._

    Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

    ☑ You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

    (1)    I agree to reaffirm the debt described above.

    (2)    Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

    (3)    The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

    (4)    I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

    (5)    I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date 03/03/2016    Signature _[signed]_
                                                                                     *Debtor*

Date _____    Signature _____
                                                                                     *Joint Debtor, if any*

**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor BECU                   PO Box 97050, Seattle, WA 98124
     *Print Name*                                      *Address*

Michelle L.                  Michelle Logsdon   3/11/2016
*Print Name of Representative*            *Signature*                *Date*

## PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

[X] A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date 3/9/16    Signature of Debtor's Attorney _[signed]_

                 Print Name of Debtor's Attorney Darrel Carter

## PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.

Reaffirming a debt is a serious financial decision. The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A. DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

6. **When will this Reaffirmation Agreement be effective?**

   a. If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and

   i. if the creditor is not a Credit Union, your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

   ii. if the creditor is a Credit Union, your Reaffirmation Agreement becomes effective when it is filed with the court.

   b. If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement, the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

B. **INSTRUCTIONS**

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 427).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home. You can use Form 2400B to do this.*

C. **DEFINITIONS**

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.



**LOAN AGREEMENT AND CONSUMER CREDIT DISCLOSURE STATEMENT ("Agreement")**

You promise to pay the amount borrowed, plus interest, other permitted charges and fees to the order of Boeing Employees' Credit Union ("Lender") or assignee, according to the terms of this Agreement (including those set forth in the Federal Truth-in-Lending Disclosure). Numbers, phrases or words preceded by a ☐ are applicable only if the ☐ is marked, e.g. ☒

In this Agreement, the use of the words "Credit Union", "We", "Us" and "Our" mean Boeing Employees Credit Union. The Borrower(s) of the Agreement, individually and collectively, are sometimes referred to as "You" or "Your"  (e) means estimate, (n/a) means not applicable

| Borrower(s) | | | | | | 2267559 |
|---|---|---|---|---|---|---|
| Christopher Yoo | | | | | | |

| ANNUAL PERCENTAGE RATE<br>The cost of Your credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost You | AMOUNT FINANCED<br>The amount of credit provided to You or on Your behalf | TOTAL OF PAYMENTS<br>The amount You will have paid when You have made all scheduled payments | | Date | Account Number |
|---|---|---|---|---|---|---|
| 2.84 % | $ 5,363.20 | $ 59,046.09 | $ 64,409.29 | | 05/13/2014 | 8037 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | | When Payments Are Due |
|---|---|---|---|
| 71 | $ 894.58 | 07/05/2014 | and every month thereafter |
| 1 | $894.11 | | Final payment due 06/05/2020 |

You may obtain property insurance from anyone You want that is acceptable to the Credit Union.
☐ Required Deposit: The Annual Percentage Rate does not reflect Your required deposit.
Assumability: Your loan is not assumable.
Security: You are giving a security interest in:
☒ The goods or property being purchased.
☐ Personal property (other than household goods or any dwelling) securing other loans with Us.
☒ Your present and future shares or deposits in the Credit Union.
☐ Other

Prepayment: If You pay off early, You will not have to pay a penalty.

Late Charge: If Your payment is 10 or more days late, You will be charged the greater of $25.00 or 5.00% of the payment.

Filing Fee $350.00  Non-Filing Insurance $ Not Applicable

See Your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

Simple Interest Rate of ___2.840___ % per Annum.

☒ Default Rate. An increase in the interest rate will result in an increase in the number of Your regularly scheduled payments. Upon any occurrence of default and as permitted by law, We reserve the right to immediately increase the interest rate applicable to any outstanding balance on Your loan to an amount equal to the highest rate allowed by law (currently __19.90%__). This interest rate will apply to Your entire outstanding balance existing on and after the occurrence of default and will continue to apply until Your balance is repaid in full.

| Itemization of Amount Financed of | Amount Paid to Others on Your Behalf: |
|---|---|
| Amount Given to You Directly _____ | |
| Amount Paid on Your Account _____ | |

Security Interest. To secure all obligations of Borrower(s) hereunder to the Credit Union, You give a security interest and lien in and upon the following property, including any and all accessions, related insurance proceeds or insurance premium refunds.

| Year | Make | Model | V.I.N./Serial No. |
|---|---|---|---|
| 2012 | Mercedes-Benz | GL-Class | 4JGBF7BE6CA795106 |

| Other | | Pledged Amount | Pledged Account Numbers |
|---|---|---|---|
| | | | |

Further paragraphs of this Agreement are set forth on the separate page titled "Additional Provisions of Loan Agreement", and You agree to be bound by all of the provisions of this Agreement.

NOTICE: You understand and agree that by endorsing or negotiating the loan proceeds check issued to this Agreement, that You acknowledge receiving a copy of this Agreement (and Exhibits, if any) that You have read it in its entirety and that You accept and agree to all of the terms thereof including the provisions set forth on the separate Page titled "Additional Provisions of Agreement".

☒ Automatic Payment. You hereby request to have Your payments made via automatic transfer from Your Credit Union account number ████████ beginning on 7/5/2014 and continuing in accordance with Your payment schedule. If We are unable to transfer the necessary payment amount from Your designated deposit account, You will be assessed an NSF Fee in addition to any late charge that may become due under this Agreement.

Signatures: By signing below, You acknowledge that You have read this Agreement, that You understand it, and that You have received a completely filled in copy of it.

X _[signature]_ 5/13/14      X _____
Signature of Borrower    Date    Signature of Borrower    Date

X _____    X _____
Signature of Borrower    Date    Signature of Borrower    Date

X _____    X _____
Signature of Owner of Collateral (other than borrower) Date    Signature of Owner of Collateral (other than borrower) Date

Copyright Oak Tree Business Systems, Inc. 2011-2012. All Rights Reserved.    Page 1 of 2    BECU 10/2012  OTBS 811A BECU (5/12)

## ADDITIONAL PROVISIONS OF LOAN AGREEMENT

1. **LIABILITY OF PARTIES.** Each person who signs this Agreement as a Borrower who endorses or negotiates the loan proceeds check related to this Agreement (other than a Dealer/Payee) and whose name appears in this Agreement as Borrower agrees to be individually and jointly obligated to pay Your loan in accordance with the terms and conditions of this Agreement. Any person who signs this Agreement or the loan proceeds check related to this Agreement as "Owner of Collateral (other than Borrower)" does so voluntarily and solely to give a security interest in the Collateral shown in the Security Interest section in this Agreement, but is not personally liable for any indebtedness created by this Agreement.

2. **INTEREST.** Interest will be charged on the unpaid balance of Your loan at the Simple Interest Rate designated in this Agreement until Your balance is paid in full. Any payment may be made early without penalty, and any early payments will have the result of reducing the total amount of interest paid. Any payment made after the due date will have the result of increasing the total amount of interest paid.

3. **PAYMENTS.** Your payments are to be made in lawful money of the United States according to the Payment Schedule in this Agreement. Any partial prepayment of Your loan will not delay Your next scheduled payment. If, when You pay Your last scheduled payment, the amount You pay exceeds Your loan balance, then You give the Credit Union permission to deposit the excess to Your share account.

4. **COLLATERAL.** The Credit Union has been granted a security interest or lien in or upon the Collateral designated in this Agreement or in a separate document such as a Security Agreement, Assignment, Pledge or similar document (the subject matter of such a security interest or lien is referred to as "Collateral" in this Agreement). Except for the Credit Union's security interest or lien, the Collateral is owned free and clear from any adverse claim, security interest or encumbrance other than as now disclosed to the Credit Union. Without the express written consent of the Credit Union, no other liens, security interests or encumbrances will be allowed to attach to the Collateral. You agree to inform the Credit Union immediately if the Collateral is to be moved from Your address shown in this Agreement or at such other address at which You have informed the Credit Union the Collateral is now located. The Collateral shall not be sold or ownership otherwise transferred and at all times the Collateral shall be kept in good repair. The Collateral shall not be used for any unlawful purpose. The Credit Union shall receive the full cooperation of the Borrower or Owner in obtaining everything that We require to place and/or maintain Our security interest in and/or lien on the Collateral. The Credit Union may examine and inspect the Collateral at any time wherever located. All taxes or assessments on the Collateral shall be paid as they come due, and if not paid, the Credit Union may pay them and shall be entitled to reimbursement or, alternatively, to add any amount so paid to the unpaid balance of Your loan subject to the applicable interest rate.

   Collateral (other than household goods or any dwelling) given as security under this Agreement or for any other loan You may have with Us will secure all amounts You owe Us now and in the future if that status is reflected in the "Truth-In-Lending Disclosure" in any particular Agreement evidencing such debt.

5. **LIEN ON SHARES.** If shares or deposits are pledged as Collateral for this loan, You understand that the balance in Your account(s) on deposit with the Credit Union must be kept at least equal to the balance of Your loan until Your loan is repaid in full. We may, however, permit You to maintain or reduce Your account balances below Your loan balance. If You are in default, the Credit Union may apply all shares (except Keogh accounts and IRA accounts) then on deposit to Your loan up to an amount sufficient to repay Your loan.

6. **PROPERTY INSURANCE.** You promise to maintain property insurance in an amount necessary to protect Our security interest in the Collateral, with Us named as loss payee for Our protection. Such insurance shall protect against loss by fire, theft and collision and will provide "all risks" hull insurance in the case of aircraft or boats and accessories thereto, if any. You may provide the required property insurance through an existing policy or by a policy You independently obtain and pay for from a person of Your own choosing, providing such person is reasonably acceptable to Us. You agree to deliver satisfactory evidence of the insurance policy to Us within any time period specified in any notice from Us or as Our behalf. If You do not get or keep this insurance, We may, at Our sole option, obtain insurance to protect Our interest and add its costs to Your loan and You agree to pay for it (by such means as increasing Your payment or increasing Your loan term). We are under no obligation to obtain insurance on Your behalf. If We do obtain insurance, the cost of obtaining that insurance may be added to Your loan balance, subject to the applicable interest rate. We have the authority to obtain, adjust, settle or cancel insurance and may endorse any party's name on any draft.

   The next three paragraphs are applicable if You fail to insure Collateral which is a motor vehicle or vessel purchased with the proceeds of this loan if this Agreement is subject to the laws of the State of Washington.

   WARNING: Unless you provide Us with evidence of the insurance coverage as required by this Agreement, We may purchase insurance at Your expense to protect Our interest. This insurance may, but need not, also protect Your interest. If the Collateral becomes damaged, the coverage We purchase may not pay any claim You make or any claim made against You. You may later cancel this coverage by providing evidence that You have obtained proper coverage elsewhere.

   You are responsible for the cost of any insurance purchased by Us. The cost of this insurance may be added to the principal balance of Your Loan. If the cost is added, the interest rate applicable to Your Loan will apply to this added amount. The effective date of coverage may be the date Your prior coverage lapsed or the date You failed to provide proof of coverage.

   The coverage We purchase may be considerably more expensive than insurance You can obtain on Your own and may not satisfy Washington's mandatory liability insurance laws.

7. **DEFAULT.** Your loan shall be in default if any of the following occurs: (a) You do not make any payment or perform any obligation under this Agreement or any other Agreement that You may have with the Credit Union; or (b) You have made a false or misleading statement in Your credit application and/or in Your representations to the Credit Union while You owe money on this loan; or (c) You should die, or be involved in any insolvency, receivership or custodial proceeding brought by or against You; or (d) a judgment or tax lien should be filed against You or any attachment or garnishment should be issued against any of Your property or rights, specifically including anyone starting an action or proceeding to seize any of Your funds on deposit with the Credit Union; and/or (e) the Credit Union should, in good faith, believe Your ability to repay Your indebtedness hereunder is or soon will be impaired, time being of the very essence.

   Upon any occurrence of default, and to the extent permitted by law, We may declare the entire balance of Your loan immediately due and payable, without prior notice or demand. If the entire balance is not then paid immediately upon default, and if permitted by law, the Collateral shall be voluntarily surrendered to the Credit Union at a time and place acceptable to it. If this is not done, to the extent permitted by law, the Credit Union may enter the premises where the Collateral is located and take possession of it and the Credit Union may assert the defense of a superior right of possession as the holder of a security interest to any offense of alleged wrongful taking and conversion. The Credit Union may sell or dispose of the Collateral in any manner permitted by law, and any resulting deficiency on Your loan shall be immediately paid to the Credit Union. In the event collection efforts are required to obtain payment on this account, You agree to pay all court costs, private process server fees, investigation fees or other costs incurred in collection and reasonable attorneys' fees incurred in the course of collecting any amounts owed under this Agreement or in the recovery of any Collateral. As permitted by law, the Credit Union shall have the right to impress and enforce a statutory lien upon the shares and dividends of any member indebted to it, and We may enforce our right to do so without further notice to You. Additionally, You agree that We may set-off any mutual indebtedness.

8. **ASSUMABILITY.** Your loan is not assumable.

9. **DELAY IN ENFORCEMENT.** We do not lose Our rights under this or any related agreement if We delay enforcing them. We can accept late payments, partial payments, or any other payments, even if they are marked "paid in full" without losing any of Our rights under this Agreement. If any provision of this or any related agreement is determined to be unenforceable or invalid, all other provisions remain in full force and effect.

10. **GOVERNING LAW.** You understand and agree that this Agreement will be governed by the laws of the State of Washington except to the extent that federal law controls. You agree that the venue of any action brought by any party to this Agreement may, at Our option, be laid in the county in which our main office is located.

---

**NOTICE TO BORROWER AND ANY CO-BORROWER**

By endorsing or negotiating the loan proceeds check related to this Agreement: (1) You accept and agree to the terms of this Agreement; (2) You grant Us a security interest or lien in or upon any Collateral designated in this Agreement; and (3) You promise to obtain and maintain property insurance (if applicable) according to the Property Insurance provision above and any "Agreement to Provide Insurance" given to You along with this Agreement.

If You do not agree to any of the terms of this Agreement, do not endorse the loan proceeds check and return this Agreement and check to Us immediately at the address shown on the front of the check.

---

Copyright Oak Tree Business Systems, Inc., 2011-2012. All Rights Reserved.　　　Page 2 of 3　　　OTBS 611A SECU (9/12)

## LICENSING
**Vehicle/Vessel Inquiry**
**Boeing Employees Credit Union**							January 22, 2016 12:17:03 PM

The vehicle information displayed below is from the current vehicle record as of 1/22/2016 at 12:17:37 PM
To request copies of records, reports of sale, or a fee history, please email recordsdesk@dol.wa.gov.
For titling questions, please call Customer Service at 360-902-3770, option 5.

### OWNER INFORMATION
Mailing address of registered owner
Yoo, Chris
1641 Evergreen Point Rd
Medina, WA 98039-2326

Legal owner
Becu
PO Box 997500
Sacramento, CA 95899

### PLATE INFORMATION
| | |
|---|---|
| Plate | AIC0784 |
| Expires | 4/28/2016 |
| Issued | 06-2012 |
| Tab # | X527273-16 |
| Previous tab # | N544964-15 |

### PLATE/VIN FLAGS
Plate flags			VIN flags
Lien holder
Centennial plate

### TITLE/RENEWAL INFORMATION
| | |
|---|---|
| Last transaction | Internet renewal |
| Last tran date | 4/1/2015 |
| Total fees paid | $216.75 |
| Previous transaction | Verified title update |
| Previous tran date | 6/18/2014 |
| Title # | 1415025910 |
| Title transferred | 5/30/2014 |

### REMARKS
Electronic t.u:
RTA tax paid
TBD - 1718

### BRANDS

### VEHICLE INFORMATION
| | |
|---|---|
| Model year | 2012 |
| Make | MERZ |
| Series body | GL450 |
| Model | GL |
| Body type | UT |
| VIN | 4JGBF7BE6CA795106 |
| Use class | Passenger car |
| Color | White |
| Current odometer | A 00016431 |
| Previous odometer | A 00000025 |
| Power | Gasoline |
| Value code | $53,445 |
| Value year | 2012 |

### ADDITIONAL VEHICLE INFORMATION
| | |
|---|---|
| Gross weight | |
| Scale weight | 5,189 lbs. |
| Tonnage fees | $0.00 |
| Tonnage abatement | 00 |
| Tonnage exp date | |

Privacy Act Disclaimer
Access to IVIPS is restricted to authorized persons or organizations.
Unauthorized use or disclosure of vehicle and vessel information is a crime punishable by fine or imprisonment and may result in civil damages.

Boeing Employees Credit Union				IVIPS Vehicle/Vessel Inquiry				January 22, 2016 12:17:35 PM