David Neuman, WSBA #48176
Israels & Neuman
10900 NE 8th Street, Suite 1000
PMB #155
Bellevue, WA 98004
T: 206-795-5798
dave@israelsneuman.com
Attorney for Plaintiffs

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| IN RE: | Case No. 16-10191-CMA |
| CHRIS YOUNG DONG YOO, and JIEUN SONG YOO, | Chapter 7 |
| Debtors, | Adv. No. |
| DAVID FLEMING, ESTHER FLEMING, individually and as Trustee of the EMMA T. GONZALES IRREVOCABLE TRUST DATED 3-11-2015, ELAINE BYSTROM, TAMI LOCKE, and DOROTHY CALVERT, | **COMPLAINT FOR DECREE OF NON-DISCHARGEABILITY** |
| Plaintiffs, | |
| vs. | |
| CHRIS YOUNG DONG YOO, and JIEUN SONG YOO, | |
| Defendants. | |

COME NOW David Fleming, Esther Fleming, individually and as Trustee of the Emma T. Gonzales Irrevocable Trust Dated 3-11-2015, Elaine Bystrom, Tami Locke, and Dorothy Calver (hereinafter "Plaintiffs"), by and through their attorney David Neuman, and hereby allege as follows:

## PARTIES

1. David and Esther Fleming are a married couple and have been residents of Kirkland, Washington at all times relevant.

2. Esther Fleming's mother is Emma T. Gonzales. Esther is the Trustee of the Emma T. Gonzales Irrevocable Trust Dated 3-11-2015. Emma T. Gonzales has been a resident of Kirkland, Washington at all times relevant.

3. Elaine Bystrom and Tami Locke are domestic partners and were residents of Seattle, Washington until June 2007; since then they have been residents of Kalama, Washington.

4. Dorothy Calvert is an individual and has been a resident of Bellevue, Washington at all times relevant.

5. Defendant Chris Young Dong Yoo (hereinafter "Defendant" or "Chris Yoo") is the Debtor in this Chapter 7 proceeding, Case No. 16-10191-CMA. Chris Yoo is one of the former control persons, owners, and executives for a number of entities, including Summit Asset Strategies Wealth Management, LLC, Summit Asset Strategies Investment Advisors, Inc., Summit Asset Strategies Investment Management, LLC, Summit Strategic Opportunities Fund I, LLC, Summit Strategic Opportunities Fund II, LLC, Summit Strategic Value Fund, LLC, Summit Asset Strategies, LLC, Vertex Strategies, Inc., and others (hereinafter collectively the "Summit" entities). Chris Yoo and these related entities held themselves out to the public and the Plaintiffs as investment advisors, and in turn, as fiduciaries of the Plaintiffs. All acts described in this Complaint were for the benefit of Chris Yoo's marital community.

6. Defendant Jieun Song Yoo was the spouse of Defendant Chris Young Dong Yoo at all times relevant to this Complaint. On information and belief, defendant Chris Yoo acted

with the knowledge and cooperation of Defendant Jieun Song Yoo, and the two of them enjoyed a lavish lifestyle together based upon the actions complained of in this Complaint. Defendant Jieun Song Yoo is a Debtor in this Chapter 7 proceeding, Case No. 16-10191-CMA.

## JURISDICTION AND VENUE

7. This adversary proceeding is being brought in connection with the Defendants' Chapter 7 case, Case No. 16-10191-CMA.

8. This Court has jurisdiction over this matter pursuant to the provisions of 28 USC §§ 1334(b) and 157(a).

9. This is a core proceeding under 28 USC § 157(b)(2)(I).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

10. This is an action for the recovery of investment losses. The investments at issue are fraudulent securities sold and marketed by advisor Chris Yoo and his related entities.

11. Defendant Chris Yoo and his related entities recommended and sold numerous fraudulent securities to the Plaintiffs.

12. Defendant Chris Yoo and others created the Summit entities starting around 2006.

13. Beginning in 2006 and continuing until late 2015, Chris Yoo marketed a number of purported securities products, including the following:

    a.    Summit Asset Strategies Investment Management LLC;

    b.    Summit Stable Value Fund;

    c.    Summit Strategic Opportunities Fund I;

    d.    Summit Strategic Opportunities Fund II;

    e.    SAS Collateralized Guaranteed Note-SF1;

3}

f. SAS Collateralized Guaranteed Note-SV2;

g. Partners Syndicate Investing Account (also referred to as "PNR-3" and "PNR-5");

h. Summit Strategic Hedge "Absolute Return" Fund;

i. Vertex Strategies, Inc., which were allegedly invested through Rydex (Guggenheim Investments) and J.P. Morgan;

j. Summit Strategic Opportunities Certificates;

k. Summit Fixed Note Certificates;

l. Summit Brokered Bank Certificates;

m. JP Morgan Fixed Notes; and

n. Rydex Fixed Note Certificates.

14. With each of the above-referenced "investments", Chris Yoo represented that they had fixed rates of return with varying maturity dates. Yoo claimed that the rates of return also varied depending on the particular "investment" and the time that each "investment" was made.

15. Chris Yoo represented that he would return the principal money invested, plus any accrued interest, at the maturity date of each corresponding investment.

16. Some of the above-named investments were represented to be "guaranteed", by virtue of their name. Of the investments that were not "guaranteed", Chris Yoo represented that these investments were "safe" and "conservative", with little to no risk. He made these representations to the Plaintiffs at the time of each of their investments (with more detail below).

17. Relying on the representations that these investments were guaranteed, safe,

4}

conservative, or had little to no risk, each of the Plaintiffs made substantial investments in the securities products referenced above.

18. David and Esther Fleming gave the following monies to Chris Yoo to make purported investments, relying on the representations made by Yoo:

    a)     On or about October 2, 2006, the Flemings gave Yoo $515,902 to invest in the Summit Strategic Hedge Absolute Return Fund;

    b)     On or about February 26, 2007, the Flemings gave Yoo another $20,000 to invest in the Summit Strategic Hedge Absolute Return Fund;

    c)     On or about May 29, 2007, the Flemings gave Yoo $150,000 to invest in the Summit Strategic Opportunities Fund I;

    d)     On or about September 25, 2008, the Flemings gave Yoo another $151,000 to invest in the Summit Strategic Opportunities Fund I;

    e)     On or about October 31, 2008, the Flemings gave Yoo $250,000 to invest in the Summit Strategic Opportunities Fund I;

    f)     On or about January 28, 2009, the Flemings gave Yoo $100,000 to invest in the Summit Strategic Opportunities Fund I;

    g)     On or about December 2, 2009, the Flemings gave Yoo $100,000 to invest in the Summit Strategic Opportunities Fund II;

    h)     On or about May 3, 2010, the Flemings gave Yoo another $100,000 to invest in the Summit Strategic Opportunities Fund II;

    i)     On or about August 26, 2010, the Flemings gave Yoo $150,000 to invest in PNR 3;

    j)     On or about July 6, 2011, the Flemings gave Yoo $252,927 to invest in PNR 3;

k) On or about June 30, 2012, the Flemings' money in the Summit Strategic Opportunities Fund II purportedly matured and was transferred to the Summit Asset Strategies Collateralized Guaranteed Note SV2;

l) On or about March 1, 2015, the Flemings gave Yoo $20,000 to invest in Rydex;

m) On or about April 4, 2015, the Flemings gave Yoo another $50,000 to invest in the Summit Asset Strategies Collateralized Guaranteed Note SV2;

n) On or about April 16, 2015, the Flemings gave Yoo yet another $150,000 to invest in the Summit Asset Strategies Collateralized Guaranteed Note SV2; and

o) On or about October 8, 2015, the Flemings gave Yoo $20,000 to invest in JP Morgan.

19. On or about February 28, 2009, Emma Gonzales gave $350,000 to Chris Yoo to make a purported investment in the Summit Strategic Opportunities Fund (which assets were later transferred to the Emma Gonzales Irrevocable Trust), relying on the representations made by Yoo.

20. In January 2013, Emma Gonzales' purported investment in the Summit Strategic Opportunities Fund matured and was then invested in the Summit Asset Strategies Collateralized Guaranteed Note-SF1.

21. Elaine Bystrom gave the following monies to Chris Yoo to make purported investments, relying on the representations made by Yoo:

a) On or about July 30, 2007, Elaine gave Yoo $344,953 to invest in the Summit Strategic Opportunities Fund II;

b) On or about September 4, 2007, Elaine gave Yoo another $22,520 to invest in

6}

the Summit Strategic Opportunities Fund II;

c) On or about June 30, 2010, Elaine gave Yoo another $32,600 to invest in the Summit Strategic Opportunities Fund II;

d) On or about November 11, 2010, Elaine gave Yoo $128,000 to invest in Summit Asset Strategies Investment Management LLC;

e) On or about May 24, 2012, Elaine gave Yoo another $50,000 to invest in the Summit Strategic Opportunities Fund II;

f) On or about June 22, 2012, Elaine gave Yoo another $10,000 to invest in the Summit Strategic Opportunities Fund II;

g) On or about October 14, 2012, Elaine gave Yoo another $40,000 to invest in the Summit Strategic Opportunities Fund II;

h) Elaine's purported investments in Summit Strategic Opportunities Fund II were transferred to the purported SAS Collateralized Guaranteed Note SV2 on or about December 2, 2012;

i) On or about December 13, 2012, Elaine gave Yoo another $15,000 to invest in the SAS Collateralized Guaranteed Note SV2;

j) On or about September 16, 2013, Elaine gave Yoo another $50,000 to invest in the SAS Collateralized Guaranteed Note SV2;

k) On or about October 2, 2013, Elaine gave Yoo another $95,000 to invest in the SAS Collateralized Guaranteed Note SV2;

l) On or about November 12, 2014, Elaine gave Yoo another $15,000 to invest in the SAS Collateralized Guaranteed Note SV2; and

m) On or about November 19, 2015, Elaine gave Yoo another $20,000 to invest in

7}
Case 16-10191-CMA    Doc 23    Filed 04/18/16    Ent. 04/18/16 08:23:32    Pg. 7 of 16

the SAS Collateralized Guaranteed Note SV2.

22. Tami Locke gave the following monies to Chris Yoo to make purported investments, relying on the representations made by Yoo:

a) On or about March 26, 2015, Tami gave Yoo $150,000 to invest in a Rydex equity fund.

23. Dorothy Calvert gave the following monies to Chris Yoo to make purported investments, relying on the representations made by Yoo:

a) On or about April 20, 2009, Dorothy gave Yoo $95,000 to invest with the Summit entities;

b) On or about March 22, 2010, Dorothy gave Yoo another $22,851 to invest with the Summit entities;

c) On or about April 20, 2010, Dorothy cashed out a life insurance policy and gave $40,000 to Yoo to invest in the Summit entities;

d) On or about March 31, 2012, Dorothy gave Yoo $90,963 to invest in Summit Strategic Opportunities Certificates;

e) On or about September 30, 2012, Dorothy gave Yoo $32,904 to invest in Summit Strategic Opportunities Certificates;

f) On or about December 31, 2012, Dorothy gave Yoo $81,990 to invest in Summit Strategic Opportunities Certificates;

g) The Summit Strategic Opportunities Certificates purportedly had one year maturities, which were renewed annually by Dorothy, until 2015;

h) On or about September 30, 2014, $15,155 of Dorothy's money was purportedly transferred to a "Summit Brokered Bank Certificate";

8}

i) On or about December 31, 2014, $77,075 of Dorothy's money was purportedly transferred to a "JP Morgan Fixed Note"; and

j) On or about March 31, 2015, $80,851 of Dorothy's money was purportedly transferred to a "Rydex Fixed Note".

24. Chris Yoo represented that he would invest the investors' money in various equities and bonds within the various funds or investment products.

25. Chris Yoo and his related entities also sent periodic statements to the Plaintiffs and other investors, leading the investors to believe that their purported securities were invested as represented and were earning interest or dividends.

26. At various times, Chris Yoo and his related entities would send purported "interest" or "dividend" payments to the Plaintiffs and other investors, lulling the Plaintiffs into thinking that their investments were indeed earning interest or dividends.

27. In reality, Chris Yoo did not invest the funds as represented. Instead, he stole the money to fund his lavish lifestyle with his wife, Jieun Song Yoo.

28. One of the products that Chris Yoo marketed and sold was the Summit Stable Value Fund, which promised a 7% return plus a return of principal. The Summit Stable Value Fund was purported to invest in a number of equity and debt investments.

29. Chris Yoo allegedly created fraudulent records to demonstrate the purported trading within this fund, in an effort to convince various auditors that the trading and internal assets of the fund were legitimate. In fact, these records were false and designed to perpetuate his fraudulent scheme.

30. The Stable Value Fund, like the other above-referenced investments, were purely Ponzi-like schemes, in which investors put money into the purported funds, and then later

9}

received other investors' funds disguised as "interest" or "dividend" payments.

31. In September 2015, the Securities and Exchange Commissions ("SEC") brought a civil action Chris Yoo, Summit Asset Strategies Wealth Management, LLC, and Summit Asset Strategies Investment Management, LLC with securities fraud, alleging that Chris Yoo and these entities artificially inflated the values of the internal investments of the Summit Stable Value Fund.

32. Chris Yoo and these entities agreed to settle the claims with the SEC by agreeing to pay a combined settlement amount of $1,332,274 (inclusive of disgorgement of commissions, prejudgment interest, and penalties). In addition, Chris Yoo agreed to be barred from the securities industry. It is believed that neither Chris Yoo nor his entities have paid any portion of the settlement amount.

33. After the SEC announced its settlement with Yoo and his entities in September 2015, a number of investors became concerned about their other purported investments.

34. Chris Yoo continuously represented that the investments were doing fine, and that the investments were made as represented.

35. These continuing misrepresentations caused the Plaintiffs to keep their money invested with Chris Yoo and his entities, and some of the Plaintiffs even made additional investments after September 2015.

36. In reality, the investments did not exist.

37. For example, a number of the Plaintiffs had purchased purported investments through Chris Yoo and his entities, which Yoo represented as investments held with "J.P. Morgan", "Rydex", or "Guggenheim Investments" (which are legitimate bank or brokerage firms). Upon contacting these firms in late 2015, the Plaintiffs were each told

that the firms did not hold funds on the Plaintiff's behalves.

38. Instead, Chris Yoo converted these funds and failed to invest these funds with "J.P. Morgan", "Rydex", or "Guggenheim Investments" as represented.

39. The Plaintiffs have asked Chris Yoo and his entities for their money back, but Yoo has refused to return such money. It is believed that the money is all gone.

40. Chris Yoo has also been the subject of a "Cease and Desist" order issued by the Washington Division of Securities.

41. Chris Yoo is also currently the subject of a criminal investigation by both the Bellevue Police Department and the Federal Bureau of Investigation.

42. The Plaintiffs' losses are substantial, and are currently estimated as follows[1]:

    a)      David and Esther Fleming - $1.25 million

    b)      Emma T. Gonzales' Trust – $185,000

    c)      Elaine Bystrom – $564,000

    d)      Tami Locke – $150,000

    e)      Dorothy Calvert - $300,000

## FIRST CAUSE OF ACTION

### To Deny Dischargeability of Debt Under 11 U.S.C. §523(a) (2)

43. Plaintiffs repeat and replead paragraphs 1 through 42, inclusive, and by this reference incorporate them herein.

44. This is an action for the recovery of funds lost through false pretenses and false representations. Defendants caused a loss of over $2,449,000.

45. Chris Yoo falsely represented that he would invest the Plaintiffs' money in the

---

[1]. The Claimants' losses are estimates at this time and do not include interest. The Claimants reserve the right to

11}

purported investment products and funds.

46. Chris Yoo also falsely represented that the investments were "safe", "conservative", "guaranteed", or that they had little to no risk.

47. Relying on his representations, the Plaintiffs gave substantial monies to Chris Yoo and his related entities to invest on their behalf in various equity and debt investments.

48. Instead, the money was converted by Chris Yoo to fund his lifestyle with his wife.

49. The Plaintiffs have asked for their money back, but Yoo has refused to give it back.

50. Plaintiffs have lost their entire investment.

51. The debt owed by Defendants to Plaintiffs is non-dischargeable under §523(a) (2) of the Bankruptcy Code.

## SECOND CAUSE OF ACTION

### To Deny Dischargeability of Debt under 11 U.S.C. §523(a) (4)

52. Plaintiffs repeat and replead paragraphs 1 through 42, inclusive and by this reference incorporate them herein.

53. Defendant Chris Yoo at all relevant times herein was a fiduciary of Plaintiff in the context of 11 U.S.C. §523(a) (4) with respect to the management of Plaintiff's assets and investments.

54. Defendant Chris Yoo acted as the Plaintiffs' investment advisor at all times relevant.

55. Yoo owed Plaintiffs fiduciary duties pursuant to common law and industry standards of practice, including but not limited to recommending securities to the Plaintiffs only after studying them sufficiently to become informed as to their nature, price and risks.

---

amend or supplement these loss numbers.

12}

56. Yoo was also obligated to inform Plaintiffs of the risks involved in purchasing or selling these securities, and obligated to inform Plaintiffs of all other material facts concerning the securities.

57. In fact, Yoo failed in each of these fiduciary obligations by recommending the fraudulent investments mentioned above.

58. As a result of being placed in these investments, Plaintiffs lost a substantial amount of money when the investments wound up being scams, and Yoo and his entities refused to refund Plaintiffs' funds.

59. By reason of the hereinbefore alleged conduct, Yoo breached his fiduciary duty to Plaintiffs.

60. As a direct and proximate result of Yoo's breach of his fiduciary duties, Plaintiffs have suffered damages entitling them to rescission of the disputed investments, or in the alternative, compensatory damages in the amount of not less than $2,449,000.

61. Defendant Chris Yoo's misrepresentations and conduct took place while acting in a fiduciary capacity. Such debt owed from Defendant to Plaintiffs is non-dischargeable pursuant to 11 U.S.C. §523 (a) (4) of the bankruptcy Code.

### THIRD CAUSE OF ACTION

### To Deny Dischargeability of Debt under 11 U.S.C. §523(a) (6)

62. Plaintiffs repeat and replead paragraphs 1 through 42, inclusive and by this reference incorporate them herein.

63. Defendant's misrepresentations were designed to deceive Plaintiffs and constituted willful and malicious injury by the Defendant to the Plaintiffs and to Plaintiffs' property. Such conduct was knowing and willful and it was reasonably foreseeable that such

13}

conduct would result in injury to Plaintiffs.

64. In convincing Plaintiffs to invest in the various Summit investments, he misrepresented the risks of such investments and misrepresented whether the Plaintiffs' monies would actually be invested in the purported funds.

65. Such debts owed from Defendant to Plaintiffs are non-dischargeable pursuant to 11 U.S.C. §523(a) (6) of the Bankruptcy Code.

## FOURTH CAUSE OF ACTION

### To Deny Dischargeability of Debt under 11 U.S.C. §523(a) (19)

66. Plaintiffs repeat and replead paragraphs 1 through 42, inclusive and by this reference incorporate them herein.

67. 11 USCS § 523(a)(19) provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title [11 USCS § 727, 1141, 1228(a), 1228(b), or 1328(b)] does not discharge an individual debtor
> from any debt–
>     (19) that--
>         (A) is for--
>         (i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934 [15 USCS §78c(a)(47)]), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or
>
>         (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and
>
>         (B) results, before, on, or after the date on which the petition was filed, from--
>         (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
>         (ii) any settlement agreement entered into by the debtor; or

>  (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

68. At all times relevant, there existed a statue entitled the Securities Act of Washington, under which it is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:

> (1) To employ any device, scheme, or artifice to defraud;
> (2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
> (3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

See RCW 21.20.010.

69. The Securities Act of Washington further states:

> Any person, who offers or sells a security in violation of any provisions of RCW 21.20.010, 21.20.140 (1) or (2), or 21.20.180 through 21.20.230, is liable to the person buying the security from him or her, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at eight percent per annum from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he or she no longer owns the security. Damages are the amount that would be recoverable upon a tender less (a) the value of the security when the buyer disposed of it and (b) interest at eight percent per annum from the date of disposition.

See RCW 21.20.430.

70. The aforementioned conduct violated the provisions of the Securities Act of Washington, in that Chris Yoo employed a scheme to defraud the Plaintiffs, and that he made material misrepresentations and omissions of fact regarding the Summit investments.

71. At all times relevant, the purported investments sold and marketed by Chris Yoo and the Summit entities were securities.

72. Such debts owed from Defendant to Plaintiffs are non-dischargeable pursuant to 11 U.S.C. §523(a) (19) of the Bankruptcy Code.

15}

WHEREFORE Plaintiffs pray for Judgment against Defendant as follows:

**As and for the First, Second, Third and Fourth Causes of Action**

1. That the debt owed by Defendant to Plaintiffs totaling $2,449,000 as of April 18, 2016 plus interest thereon be determined non-dischargeable pursuant to 11 U.S.C. §523(a)(2), (a)(4) (a)(6) and (a)(19).

2. That Plaintiffs' claim is valid, and can be enforced against any property belonging to the marital community between Mr. and Mrs. Yoo, and that such debts are not discharged.

**As and for all Causes of Action**

1. For costs of suit, reasonable attorneys' fees, expenses; and
2. For such other and further relief as this court may deem just and proper.

Dated: April 18, 2016          Respectfully submitted,

By:__/s/ David Neuman_____

David Neuman
Attorney for Plaintiffs